# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **JADE LEE WAGEMAN**, | Case No.: 6:10-cv-01198-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security | |
| Defendant. | |

RORY JOSEPH LINERUD
Linerud Law Firm
P.O. Box 1105
Salem, OR 97308-1105

      Of Attorneys for Plaintiff

AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID J. BURDETT
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

      Of Attorneys for Defendant

**SIMON, District Judge,**

## I. INTRODUCTION

Jade Lee Wageman ("Mr. Wageman") brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). The court has jurisdiction under 42 U.S.C. § 405(g).

Mr. Wageman contends that the Commissioner made two reversible errors at step five of the Commissioner's sequential disability analysis. He contends first that the Commissioner's hypothetical questions to the vocational expert failed to include all of his functional limitations, and second, that the vocational expert's testimony was erroneous. Mr. Wageman's first argument is unconvincing. The Commissioner's questions for the vocational expert included all of Mr. Wageman's functional limitations that were based on substantial evidence. Mr. Wageman's second argument warrants reversal. The vocational expert's testimony appears to conflict with definitions in the Dictionary of Occupational Titles. Accordingly, the decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with the instructions herein.

## II. BACKGROUND

### A.    Procedural History

Mr. Wageman was in a serious motor vehicle accident in 1992. He reportedly spent 91 days in a medically induced coma. Tr. 193, 200, 222, 275. Following his convalescence, he worked intermittently in the farm, service, and construction industries. Tr. 99-106. On November 7, 2007, at the age of 34, he applied for SSI. Tr. 75-81. Mr. Wageman alleges disability on the basis of a brain injury, sustained during the accident, resulting in memory problems, speech

impairment, and difficultly following instructions and maintaining focus and attention. Tr. 83, 90, 306-07. He also describes some physical limitations, including back and knee pain. Tr. 90, 302-06.

The Commissioner denied Mr. Wageman's application initially and on reconsideration. Tr. 31-38. Mr. Wageman requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 30. ALJ Marilyn Mauer held a hearing on May 6, 2009. Tr. 296-314. Following the hearing, the ALJ issued a written decision finding that Mr. Wageman was not disabled. Tr. 13-24. The Appeals Council denied Mr. Wageman's request for review and the ALJ's decision became final on September 21, 2008. Tr. 5-8. Mr. Wageman then filed a complaint in this court.

## B.      Medical and Other Evidence

To establish that he is disabled and eligible for benefits, Mr. Wageman "must produce complete and detailed objective medical reports of her condition from licensed medical professionals." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R. § 416.913(a). He may "use evidence from other sources to show the severity of [his] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 416.913(d). Mr. Wageman does not dispute the Commissioner's assessment of the majority of the medical and other evidence.

During the hearing, Mr. Wageman testified to pain in his back and knees when lifting heavy objects. Tr. 302-04. He testified that he could stand for 30 to 45 minutes at a time, sit in a chair for 40 minutes, and walk "six blocks, tops." Tr. 304-05. He added that "I lay down as often as I can." Tr. 305. He also testified that he is "very uncoordinated." Tr. 305. Nonetheless, he denied difficulty using his hands during previous periods of employment. Tr. 305. In addition to these physical limitations, Mr. Wageman described some mental difficulties. He reported that he

is "not the best thinker anymore" and had trouble remembering instructions and performing simple tasks. Tr. 302, 307.

Mr. Wageman saw Dr. Delmar Greenleaf for an orthopedic exam on February 12, 2008. Tr. 200. Based on his examination, Dr. Greenleaf found that Mr. Wageman suffered from "significant traumatic arthritis" and a "limited range of motion of the left hip joint." Tr. 207. Based on that assessment, he found that Mr. Wageman should not lift more than 25 pounds. Tr. 207. Dr. Greenleaf also noted "mild balance problems." Tr. 207. He found that Mr. Wageman's use of "hands and fingers should be unrestricted." Tr. 207. He saw "no evidence of pain behavior during [the] examiniation." Tr. 207. Dr. Greenleaf did not perform a neuropsychological examination but observed that Mr. Wageman "appears to have some mild brain dysfunction in terms of speech impediment and abnormal balance and alternating movements." Tr. 207.

Dr. William Trueblood performed a psychodiagnostic examination on January 8, 2008. Tr. 193. Dr. Trueblood opined that Mr. Wageman likely suffered from "significant memory and attention impairment due to the 1992 traumatic brain injury[.]" Tr. 197. Dr. Trueblood also stated that he "believe[d] there are . . . substantial other neuropsychological impairments such as reduced information processing speed and impairment in problem-solving and reasoning." Tr. 198. He rated Mr. Wageman's ability to understand and remember instructions as moderately impaired and his ability to sustain attention and concentration as markedly impaired. Tr. 198. He rated Mr. Wageman's adaptive skills and social interaction skills as moderately impaired. Tr. 198. Based on his evaluation, Dr. Trueblood diagnosed cognitive disorder not otherwise

specified, alcohol dependence in sustained full remission,[1] depressive disorder not otherwise specified, and adjustment disorder with anxiety. Tr. 198.

Non-examining, consulting psychologists Dr. Robert Henry and Dr. Bill Hennings each reviewed Mr. Wageman's medical records and submitted reports. Dr. Henry found that Mr. Wageman suffered from cognitive disorder not otherwise specified, depressive disorder not otherwise specified and adjustment disorder with anxiety. Tr. 211, 213. Dr. Henry completed a mental residual functional capacity assessment form. Tr. 224-26. On the form, he indicated that Mr. Wageman could carry out simple instructions and could sustain an ordinary routine without special supervision. Tr. 224. Dr. Henry concluded that Mr. Wageman "retains the ability to understand, remember and complete simple routine tasks on a consistent basis. [Mr. Wageman] may need occasional additional supervision to initiate, redirect or stay on task." Tr. 226. He recommended that Mr. Wageman have "only occasional co-worker and no public contact in the workplace." Tr. 226.

Dr. Hennings found that Mr. Wageman "has the ability to understand, remember and comp[l]ete simple routine tasks with sustained concentration and pace. [He] has the ability to interact appropriately with coworkers and supervisors, but only occasionally . . . with the general public." Tr. 236.

### III. DISABILITY DETERMINATION AND STANDARDS

**A.   Legal Standards**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted

---

[1]     "Sustained full remission" means that "none of the criteria for [d]ependence or [a]buse have been met at any time during a period of 12 months or longer." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 196 (4th ed. 2000).

or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A).

"Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v.*

*Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520). The Keyser court

described the five steps in the process as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the
> claimant's impairment severe? (3) Does the impairment meet or equal one of a list of
> specific impairments described in the regulations? (4) Is the claimant able to perform any
> work that he or she has done in the past? and (5) Are there significant numbers of jobs in
> the national economy that the claimant can perform?

*Id.* at 724-25 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

The claimant bears the burden of proof for the first four steps in the process. If the

claimant fails to meet the burden at any of those four steps, then the claimant is not disabled.

*Bustamante v. Massanari*, 262 F.3d at 949, 953-54 (9th Cir. 2001); *see Bowen v. Yuckert*, 482

U.S. 137, 140-41, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§ 416.920(g)

(setting forth general standards for evaluating disability).

The Commissioner bears the burden of proof at step five of the process, where the

Commissioner must show the claimant can perform other work that exists in significant numbers

in the national economy, "taking into consideration the claimant's residual functional capacity,

age, education, and word experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999). If

the Commissioner fails to meet this burden, then the claimant is disabled, but if the

Commissioner proves the claimant is able to perform other work which exists in the national

economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 954 (citing 20 C.F.R.

§§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1098-99); *see also* 20 C.F.R. § 416.966

OPINION AND ORDER – Page 6

(describing "work which exists in the national economy").

**B.    The ALJ's Decision**

The ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 416.920. The ALJ agreed that Mr. Wageman was not engaged in substantial gainful activity and, consequently, satisfied step one. Tr. 16.

At step two, the ALJ found that Mr. Wageman suffered from several severe impairments: "cognitive disorder, depressive disorder, adjustment disorder with depressed mood, alcohol abuse, right shoulder joint instability, and left hip fracture with reduced range of motion." Tr. 16.

At step three, the ALJ found that Mr. Wageman "does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments[.]" Tr. 17. The ALJ noted that no "treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment." Tr. 17.

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect his ability to perform work. To make this determination, the ALJ formulates the claimant's residual functional capacity ("RFC"). An RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). An RFC "is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96-8p.[2] The ALJ found that Mr. Wageman retained an RFC to perform light work, subject to some restrictions on lifting and standing. The ALJ also found that Mr. Wageman "should not have public contact," should be

---

[2]    The Commissioner publishes rulings to clarify the Social Security Administration's regulations and policy. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (*en banc*). Although they do not carry the force of law, SSRs are binding on ALJs. *Bray v. Comm'r*, 554 F.3d 1219, 1224 (9th Cir. 2009).

limited to "performing tasks no more complex than 1 to 3 steps[,] and should not be exposed to hazards." Tr. 18.

Once the ALJ has formulated the claimant's RFC, the ALJ must consider whether the claimant can, in light of that RFC, perform past or other work. To do so, the ALJ may rely on the testimony of a vocational expert ("VE"). 20 C.F.R. § 416.960(b)(2); 20 C.F.R. § 416.966(e). Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988). In response, the "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

The ALJ called a VE to testify during the administrative hearing. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated for Mr. Wageman's RFC:

> I'd like you to assume an individual of [Mr. Wageman's] age, education, and past work history. I'd like you to assume the individual can lift 20 pounds occasionally and 10 pounds frequently, can sit up to six hours in an eight[-]hour day, can stand and walk a combined total of two hours in an eight[-]hour day and requires customary breaks every two hours. The individual should have no public contact and should not be exposed to hazards or heights. Both of these restrictions are due to distractibility. The individual should not perform tasks more complex than one to three steps. Tr. 310-11.

Bearing those restrictions in mind, the ALJ asked the VE whether that hypothetical claimant could perform either Mr. Wageman's past relevant work or other work in the national economy. Tr. 311.

The VE replied that such a claimant could not perform Mr. Wageman's past relevant work, but could perform other work available in the national economy. Tr. 311-12. The VE

OPINION AND ORDER – Page 8

identified three jobs: small products assembler, semi-conductor assembler, and electronic assembler. Tr. 311-12. Based on the VE's testimony, the ALJ found that Mr. Wageman "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 24. The ALJ thus concluded that Mr. Wageman was not disabled. Tr. 24.

## IV. STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## V. DISCUSSION

In his brief to the court, Mr. Wageman contends that the ALJ made two errors at step five of the sequential analysis. First, he argues that the ALJ failed to incorporate significant functional restrictions into the hypothetical question posed to the VE. Second, Mr. Wageman argues that the ALJ erroneously relied on incorrect testimony from the VE. Mr. Wageman's first argument is incorrect. The ALJ's hypothetical question included all of Mr. Wageman's limitations that were supported by substantial evidence. Mr. Wageman's second argument, however, has merit. The VE's testimony appears to conflict with the Dictionary of Occupational

Titles. The ALJ should have asked the VE whether there was a reasonable explanation for the conflict.

## A.    The ALJ's Hypothetical Question

Mr. Wageman argues that the "ALJ failed to incorporate" limitations described by Dr. Henry into the hypothetical question the ALJ posed to the VE. Pl.'s Br. 8-9, 14-15. "An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock*, 240 F.3d at 1163. The ALJ's hypothetical must include all of the claimant's limitations that are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (hypothetical question must set out all of claimant's limitations); *Robbins v. Social Security Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (hypothetical questions need only include those limitations supported by substantial evidence). In the event that an ALJ's hypothetical question fails to account for all the claimant's impairments, the "opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Dr. Henry prepared a Psychiatric Review Technique Form ("PTRF"), in which he assessed Mr. Wageman's mental functional capacity.[3] Mr. Wageman identifies two statements made by Dr. Henry in the PRTF that the ALJ did not include in the hypothetical question she posed to the VE. First, Dr. Henry noted that Mr. Wageman should be "limited to only occasional co-worker . . . contact in the workplace." Tr. 226. Second, Dr. Henry observed that Mr. Wageman "may need occasional additional supervision to initiate, redirect or stay on task."

_____

[3]    A PRTF is a standard document, often completed by a psychological or medical consultant, that records an evaluation of the claimant's mental functioning capacity. *See* 20 C.F.R. § 416.920a(e).

Tr. 226. Mr. Wageman contends that the ALJ's failure to include Dr. Henry's remarks in the hypothetical question warrants remanding Mr. Wageman's case for payment of benefits. Pl.'s Br. 9.

The court disagrees. First, the ALJ did not err by declining to include a limitation restricting Mr. Wageman to "only occasional co-worker" contact. In her decision, the ALJ explained that she did not credit Dr. Henry's restriction on co-worker contact because it "is not supported by other evidence." Tr. 22. That is a sufficient reason. The ALJ was correct that Dr. Henry's statement is not supported by the record.[4] An ALJ may discount a doctor's opinion that is unsupported by other evidence. *Cf.* 20 CFR § 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Moreover, uncorroborated evidence offered by non-examining doctors, such as Dr. Henry, does not constitute substantial evidence. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (uncorroborated non-examining doctor's opinion does not constitute substantial evidence). Thus, the ALJ was not required to include Dr. Henry's uncorroborated assessment of Mr. Wageman's ability to relate to coworkers in the hypothetical she posed to the VE.

Second, the ALJ also did not err by omitting Dr. Henry's statement that Mr. Wageman "may need occasional additional supervision to initiate, redirect or stay on task" from the hypothetical question. The ALJ did not address this statement in her decision. But she did not need to do so because the statement does not impose a limitation on Mr. Wageman's ability to perform work. Instead, read in context, the statement makes a comparison about the amount of

_____

[4]      Although the ALJ did not mention it in her decision, it is worth noting that Dr. Hennings, who wrote a "Mental Summary" based on a review of Mr. Wageman's medical records, found that Mr. Wageman "has the ability to interact appropriately with coworkers and supervisors." Tr. 236.

OPINION AND ORDER – Page 11

supervision Mr. Wageman might need compared to other employees. Dr. Henry wrote:

> [Mr. Wageman] retains the ability to understand, remember and complete simple routine tasks on a consistent basis. [He] may need occasional additional supervision to initiate, redirect or stay on task. Tr. 226.

Dr. Henry's first sentence describes the sort of task that Mr. Wageman is capable of completing. The second sentence is most clearly understood as qualifying the first by comparing that amount of supervision Mr. Wageman might need relative to others performing "simple[,] routine tasks." The proposition that some employees may need occasional additional supervision compared to other employees is unexceptional. More importantly, Dr. Henry's statement does not describe a limitation on Mr. Wageman's capacity for work activity; it merely compares the amount of supervision that he might require relative to others.

Mr. Wageman, for his part, characterizes Dr. Henry's statement as indicating the "presence of [a] significant problem needing special supervision." Pl.'s Br. 14. Mr. Wageman vastly overstates the character of the statement. Dr. Henry's statement is phrased both permissively ("may need") and circumspectly ("occasional"). Moreover, Dr. Henry found that Mr. Wageman would *not* require "special" supervision: Earlier in the PRTF, Dr. Henry checked a response indicating that Mr. Wageman would be able to "sustain an ordinary routine without special supervision." Tr. 224. Dr. Henry also checked boxes indicating that Mr. Wageman could carry out simple instructions, work in coordination with or proximity to others, and maintain attention and concentration for extended periods. Tr. 224. In short, there is no contextual support in Dr. Henry's PRTF for the notion that his statement was intended to describe a limitation on Mr. Wageman's ability to perform work. The ALJ, therefore, did not err in omitting it from the hypothetical she posed to the VE.

OPINION AND ORDER – Page 12

**B.     Vocational Expert Testimony**

Mr. Wageman next argues that the VE's testimony "contradicts information contained in the" Dictionary of Occupational Titles ("DOT").[5] Pl.'s Br. 9. The Commissioner relies "primarily on the DOT . . . for information about the requirements of work in the national economy." SSR 00-4p. The Commissioner "also uses testimony from vocational experts to obtain occupational evidence." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In the event that definitions in the DOT conflict with the testimony of a VE, "[n]either the DOT nor the VE . . . evidence automatically 'trumps[.]' . . . The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." SSR 00-4p; *Massachi*, 486 F.3d at 1153 (endorsing rules in SSR 00-4p).

In the hypothetical question that she posed to the VE, the ALJ described a hypothetical claimant who, among other limitations, "should not be exposed to hazards." Tr. 311. In response, the VE identified three jobs in the national economy – small products assembler, electronics assembler, and semiconductor assembler ("assembly jobs") – that a hypothetical claimant with those limitations could perform. Tr. 311-12. Mr. Wageman contends that the VE's testimony is erroneous because according to the definitions in the DOT the assembly jobs involve the use of "dangerous tools" that "constitute hazards." Pl.'s Br. 11.

Neither the ALJ nor the VE explained what they understood "hazards" to entail. The DOT, moreover, does not classify jobs by their degree of exposure to potentially hazardous

---

[5]     The DOT was published by the Department of Labor, and the latest edition, the Fourth, was last published in 1991. *See* Dictionary of Occupational Titles Fourth Edition, Revised 1991, http://www.oalj.dol.gov/libdot.htm. The Commissioner "has taken administrative notice of the Dictionary of Occupational Titles[.]" *Massachi*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007).

environments. The Commissioner, however, describes some "hazards" in SSR 96-9p. That Ruling notes that "hazards" include "moving mechanical parts of equipment, tools, or machinery[.]" SSR 96-9p.

According to the DOT, all three assembly jobs require the use of machines and tools that could constitute hazards according to the definition in SSR 96-9p. A small products assembler, for instance, "fastens parts together by hand or using handtools or portable powered tools" and "[l]oads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches[.]"[6] Tasks performed by an electronics assembler require the use of "handtools, power tools, machines, and equipment."[7] A semiconductor assembler uses "bonding machines, and handtools."[8]

Despite this apparent conflict between the DOT and the VE's testimony, the ALJ did not ask the VE "whether there was a reasonable explanation for the conflict." *Massachi*, 486 F.3d at 1153-54. It may be possible that Mr. Wageman could perform the assembly jobs without exposing himself to hazards. The ALJ, however, did not obtain an explanation from the VE about how that might be possible. Without an explanation, the court "cannot determine whether the ALJ properly relied on [the VE's] testimony. As a result, [the court] cannot determine whether substantial evidence supports the ALJ's step-five finding that [Mr. Wageman] could perform other work." *Id.* at 1154. The ALJ's failure to clarify the apparent conflict is, thus, error.

On remand, the ALJ should clarify what "hazards" Mr. Wageman may not be exposed to and take additional testimony from a VE about the other work Mr. Wageman may be capable of

---

[6]    *See* DOT at http://www.oalj.dol.gov/public/dot/references/dot07a.htm.

[7]    *See* DOT at http://www.oalj.dol.gov/public/dot/references/dot07b.htm.

[8]    *See* DOT at http://www.oalj.dol.gov/public/dot/references/dot07b.htm.

performing. If there are conflicts between the VE's testimony and the DOT, the ALJ should ask

the VE to explain whether there is a reasonable explanation for the conflict.

## VI. CONCLUSION

The decision of the Commissioner is **REVERSED** and the case **REMANDED** to the

Commissioner for further proceedings consistent with the instructions herein.

IT IS SO ORDERED.

Dated this _22nd_ day of November, 2011

Michael H. Simon
United States District Judge